UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

MARIKO IKEMOTO,                        )
                                       )
        Plaintiff,                     )        No. 3:12-0531
                                       )        Chief Judge Haynes
v.                                     )
                                       )
AMERICAN RED CROSS–NASHVILLE           )
CHAPTER,                               )
                                       )
        Defendant.                     )

# MEMORANDUM

Plaintiff, Mariko Ikemoto, filed this action under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12203, against Defendant American Red Cross, Nashville Chapter, her former employer. Plaintiff's claim is that the American Red Cross failed to provide reasonable accommodations for her disability.

Before the Court is Defendant's motion for summary judgment (Docket Entry No. 39) to which Plaintiff has responded (Docket Entry No. 43), and Defendant filed a reply (Docket Entry No. 48). Defendant argues that, in essence: (1) Plaintiff cannot establish that she is a qualified individual with a disability under ADA, and (2) assuming Plaintiff is a qualified individual with a disability, Plaintiff's request for an accommodation is unreasonable as a matter of law.

For the reasons set forth below, given the proof of Defendant's significant history of accommodations to the Plaintiff, the Court concludes that Plaintiff was not terminated for requesting a reasonable accommodation. The Court also concludes that the undisputed facts reflect that the Defendant had a legitimate basis to terminate the Plaintiff and deem her ineligible for rehire. Therefore, the Court concludes that Defendant's motion for summary judgment should be granted.

# I. REVIEW OF THE RECORD[1]

The American Red Cross, Nashville Chapter ("ARC") hired Plaintiff in November 2008 as a part-time accounting associate. (Docket Entry No. 44, ¶ 1). During the course of her employment, Plaintiff requested numerous accommodations for a "chemical sensitivity" connected to a reported prior brain injury. Id. at ¶ 3. The ARC repeatedly accommodated Plaintiff that included changing the location of her office at least six times. Id. at ¶¶ 4, 5. The ARC also reimbursed Plaintiff for the costs of customized potpourri and an air purifier core filter for her office. (Docket Entry No. 1, ¶ 18), (Docket Entry No. 44, ¶ 7). On or about June 14, 2010, the ARC office was repainted and new carpet installed. Id. at ¶ 8. On June 18, 2010, Plaintiff emailed the ARC, stating that she was having a reaction to this workplace environment, with the "new and different smells that make me nauseated and feeling confused." Id. at ¶ 9.

The Social Security Administration deemed Plaintiff "totally disabled" as of June 18, 2010. Id. at ¶¶ 21, 22. On June 25, 2010, Plaintiff left work after a few hours and did not return to the ARC's Nashville office. Id. at 11. On July 2, 2010, Plaintiff emailed ARC, and stated that her primary care physician suggested that she consult with a neurologist. Plaintiff also requested to work either from home or from the Williamson County office. Id. at ¶ 13. On July 8, 2010, Plaintiff

---

[1]Upon a motion for summary judgment, the factual contentions are viewed in the light most favorable to the party opposing the motion for summary judgment. Duchon v. Cajon Co., 791 f.2d 43, 46 (6th Cir. 1986) app. 840 f.2d 16 (6th Cir. 1988) (unpublished opinion). As will be discussed infra, upon the filing of a motion for summary judgment, the opposing party must come forth with sufficient evidence to withstand a motion for directed verdict, Anderson v. Liberty Lobby, 477 U.S. 242, 247-52, 106 S.Ct. 2502, 91 L.Ed.2d 202 (1986), particularly where there has been an opportunity for discovery. Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265, 276 (1986). The Court concludes that, under the applicable law and Plaintiff's response to Defendant's Statement of Undisputed Facts, there are some factual disputes, but those disputes are not material. Thus, this section constitutes findings of fact under Fed.R.Civ.P. 56(d).

emailed ARC with an offer to work from home, explaining that she was unable to see her primary care physician due to the smell in her doctor's lobby. Id. at ¶¶ 14, 15.

On July 27, 2010, Plaintiff emailed ARC to explain that she had been in Dallas for a doctor's appointment and again offered to work from her home or the Williamson County office. Id. at 17. On July 28, 2010, ARC terminated Plaintiff's employment. Id. at ¶ 19.

## II. CONCLUSIONS OF LAW

"The very mission of the summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Fed. R. Civ. P. 56 advisory committee notes. Moreover, "district courts are widely acknowledged to possess the power to enter summary judgment *sua sponte*, so long as the opposing party was on notice that [he] had to come forward with all of [his] evidence." Celotex Corp. v. Catrett, 477 U.S. 317, 326 (1986); accord Routman v. Automatic Data Processing, Inc., 873 F.2d 970, 971 (6th Cir. 1989).

In Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986), the United States Supreme Court explained the nature of a motion for summary judgment:

> Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact.
>
> As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted.

477 U.S. at 247-48 (emphasis in the original and added in part). Earlier the Supreme Court defined a material fact for Rule 56 purposes as "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no `genuine issue for trial.'" Matsushita Electrical Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citations omitted).

A motion for summary judgment is to be considered after adequate time for discovery. Celotex, 477 U.S. at 326 (1986). Where there has been a reasonable opportunity for discovery, the party opposing the motion must make an affirmative showing of the need for additional discovery after the filing of a motion for summary judgment. Emmons v. McLaughlin, 874 F.2d 351, 355-57 (6th Cir. 1989). But see Routman, 873 F.2d at 971.

There is a certain framework in considering a summary judgment motion as to the required showing of the respective parties, as described by the Court in Celotex:

> Of course, a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact. ... [W]e find no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials negating the opponent's claim.

Celotex, 477 U.S. at 323 (emphasis deleted).

As the Court of Appeals explained, "[t]he moving party bears the burden of satisfying Rule 56(c) standards." Martin v. Kelley, 803 F.2d 236, 239 n. 4 (6th Cir. 1986). The moving party's burden is to show "clearly and convincingly" the absence of any genuine issues of material fact. Sims v. Memphis Processors, Inc., 926 F.2d 524, 526 (6th Cir. 1991)(quoting

4

Kochins v. Linden-Alimak, Inc., 799 F.2d 1128, 1133 (6th Cir. 1986)). "So long as the movant has met its initial burden of 'demonstrat[ing] the absence of a genuine issue of material fact,' the nonmoving party then 'must set forth specific facts showing that there is a genuine issue for trial.'" Emmons, 874 F.2d at 353 (quoting Celotex and Rule 56(e)).

Once the moving party meets its initial burden, the United States Court of Appeals for the Sixth Circuit warned that "the respondent must adduce more than a scintilla of evidence to overcome the motion [and]. . . must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989)(quoting Liberty Lobby). Moreover, the Court of Appeals explained that:

> The respondent must "do more than simply show that there is some metaphysical doubt as to the material facts." Further, "[w]here the record taken as a whole could not lead a rational trier of fact to find" for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is "implausible."

Street, 886 F.2d at 1480 (citations omitted). See also Hutt v. Gibson Fiber Glass Products, 914 F.2d 790, 792 (6th Cir. 1990) ("A court deciding a motion for summary judgment must determine 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'") (quoting Liberty Lobby).

If both parties make their respective showings, the Court then determines if the material factual dispute is genuine, applying the governing law.

> More important for present purposes, <u>summary judgment will not lie if the dispute about a material fact is "genuine," that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party</u>.
>
> . . . .

5

> Progressing to the specific issue in this case, we are convinced that <u>the inquiry involved in a ruling on a motion for summary judgment or for a directed verdict necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits</u>. If the defendant in a run-of-the-mill civil case moves for summary judgment or for a directed verdict based on the lack of proof of a material fact, <u>the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented</u>. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. <u>The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict -- "whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed.</u>"

Liberty Lobby, 477 U.S. at 248, 252 (citation omitted and emphasis added).

It is likewise true that:

> In ruling on [a] motion for summary judgment, the court must construe the evidence in its most favorable light in favor of the party opposing the motion and against the movant. Further, the papers supporting the movant are closely scrutinized, whereas the opponent's are indulgently treated. It has been stated that: 'The purpose of the hearing on the motion for such a judgment is not to resolve factual issues. It is to determine whether there is any genuine issue of material fact in dispute. . . .'

Bohn Aluminum & Brass Corp. v. Storm King Corp., 303 F.2d 425, 427 (6th Cir. 1962) (citation omitted). As the Court of Appeals stated, "[a]ll facts and inferences to be drawn therefrom must be read in a light most favorable to the party opposing the motion." Duchon v. Cajon Co., 791 F.2d 43, 46 (6th Cir. 1986).

The Sixth Circuit further explained the District Court's role in evaluating the proof on a summary judgment motion:

> A district court is not required to speculate on which portion of the record the nonmoving party relies, nor is it obligated to wade through and search the

> entire record for some specific facts that might support the nonmoving party's claim. Rule 56 contemplates a limited marshalling of evidence by the nonmoving party sufficient to establish a genuine issue of material fact for trial. This marshalling of evidence, however, does not require the nonmoving party to "designate" facts by citing specific page numbers. Designate means simply "to point out the location of." Webster's Third New InterNational Dictionary (1986).
>
> Of course, the designated portions of the record must be presented with enough specificity that the district court can readily identify the facts upon which the nonmoving party relies; but that need for specificity must be balanced against a party's need to be fairly apprised of how much specificity the district court requires. This notice can be adequately accomplished through a local court rule or a pretrial order.

InterRoyal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989). Here, the parties have given some references to the proof upon which they rely. Local Rules 56.01(b)-(d) require a showing of undisputed and disputed facts.

In Street, the Court of Appeals discussed the trilogy of leading Supreme Court decisions, and other authorities on summary judgment and synthesized ten rules in the "new era" on summary judgment motions:

> 1. Complex cases are not necessarily inappropriate for summary judgment.
>
> 2. Cases involving state of mind issues are not necessarily inappropriate for summary judgment.
>
> 3. The movant must meet the initial burden of showing "the absence of a genuine issue of material fact" as to an essential element of the non-movant's case.
>
> 4. This burden may be met by pointing out to the court that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case.
>
> 5. A court should apply a federal directed verdict standard in ruling on a motion for summary judgment. The inquiry on a summary judgment motion or a directed verdict motion is the same: "whether the evidence presents a sufficient disagreement

to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."

6. As on federal directed verdict motions, the "scintilla rule" applies, i.e., the respondent must adduce more than a scintilla of evidence to overcome the motion.

7. The substantive law governing the case will determine what issues of fact are material, and any heightened burden of proof required by the substantive law for an element of the respondent's case, such as proof by clear and convincing evidence, must be satisfied by the respondent.

8. The respondent cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must "present affirmative evidence in order to defeat a properly supported motion for summary judgment."

9. The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact.

10. The trial court has more discretion than in the "old era" in evaluating the respondent's evidence. The respondent must "do more than simply show that there is some metaphysical doubt as to the material facts." Further, "[w]here the record taken as a whole could not lead a rational trier of fact to find" for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is "implausible."

Street, 886 F.2d at 1479-80 (citations omitted).

The Court has distilled from these collective holdings four issues that are to be addressed upon a motion for summary judgment: (1) has the moving party "clearly and convincingly" established the absence of material facts?; (2) if so, does the plaintiff present sufficient facts to establish all the elements of the asserted claim or defense?; (3) if factual support is presented by the nonmoving party, are those facts sufficiently plausible to support a jury verdict or judgment under the applicable law?; and (4) are there any genuine factual issues with respect to those material facts under the governing law?

The ADA was enacted to counterbalance society's historic tendency to isolate and segregate individuals with disabilities. 42 U.S.C. § 12101. The ADA ensures that individuals living with disabilities are treated fairly and afforded equal opportunity within the workplace, among other areas. Id. Thus, the ADA prohibits an employer from discriminating "against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions and privileges of employment." 42 U.S.C. § 12112(a).

To recover on a claim of discrimination under the ADA, a plaintiff must show that: (1) she is an individual with a disability; (2) she is "otherwise qualified" to perform the job requirements, with or without reasonable accommodation; and (3) she was either denied a reasonable accommodation for her disability or she suffered an adverse employment action solely because of her disability. Smith v. Ameritech, 129 F.3d 857, 866 (6th Cir. 1997). The term 'qualified individual' means "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8).

An individual is disabled under the ADA if: (1) she has a physical or mental impairment that substantially limits one or more of her major life activities; (2) she has a record of such impairment; or (3) she is regarded as having such an impairment. 42 U.S.C. § 12102(1). Major life activities include but are not limited to functions such as "caring for oneself, performing manual tasks, seeing...walking, standing...learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A). An impairment that "substantially limits" one major life activity need not limit other major life activities in order to be consider a disability. Id. at (4)(C). However, "'[i]f [an

9

employee's] condition does not meet one of these categories even if he was terminated because of some medical condition, he is not disabled within the meaning of the Act. The ADA is not a general protection for medically afflicted persons.'" Daugherty v. Sajar Plastics, Inc., 544 F.3d 696, 703 (6th Cir. 2008) (citation omitted).

"The definition of disability in [the ADA] shall be construed in favor of broad coverage of individuals under this Act." Verhoff v. Time Warner Cable, Inc. 299 Fed. Appx. 488, 494 (6th Cir. 2008) *citing* Pub. L. No. 110-325, § 4(4)(A). Under the ADA, an individual's disability must be determined on a case-by-case basis. Sebest v. Campbell City School Dist. Bd. Of Educ., 94 Fed. Appx. 320, 326-27 (6th Cir. 2004).

In an evaluation dated July 7, 2010, Dr. Nancy Didriksen of Health Psychology/Behavioral Medicine in Richardson, Texas, concluded

> "Mrs. Ikemoto's severely impaired executive functions, severely impaired ability to perform calculations mentally, impaired arithmetical reasoning, low-average memory functioning, and disturbed emotional equilibrium, particularly when reacting to environmental incitants, coupled with chronic pain, chronic fatigue, and exquisite environmental sensitivity, argue most against her returning to work in her prior or similar occupation or in any occupation where she would be exposed to environmental incitants, now and in the foreseeable future. I consider her totally disabled."

(Docket Entry No. 40, Exhibit 9, p. 15).

In later evaluation on December 16, 2010, Dr. William Rea of the Environmental Health Center in Dallas opined: "It is my medical opinion that this patient is totally disabled by her sensitivities. She is unable to engage in any type of sustained work or work-like activities at this time or in the foreseeable future." Id., Exhibit 10, p. 4. Given Plaintiff's "severely impaired executive functions" Dr. Didriksen considered Plaintiff substantially limited in at least one of her major life

activities, namely, work. Id., Exhibit 9. Based on these evaluations by Plaintiff's doctors, the Court concludes that Plaintiff has a disability under the ADA.

The Defendant asserts that the Plaintiff cannot be a qualified individual with a disability under ADA standards because the Social Security Administration determined Plaintiff is totally disabled. (Docket Entry No. 44, ¶¶ 21, 22). A disability as defined under the Social Security Act is an "inability to engage in any substantial gainful activity by reason of any...physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). By contrast, the ADA defines a disabled person as one "'who...can perform the essential functions" of her job, including those who can do so only "with...reasonable accommodation.'" 42 U.S.C. § 12111(8). Despite this apparent conflict, "there are...many situations in which a SSDI [Social Security Disability Insurance] claim and an ADA claim can comfortably exist side by side. Cleveland v. Policy Management Systems Corp., 526 U.S. 795, 801 (1999). Moreover, Defendant has not contested that Plaintiff was "otherwise qualified" to perform her job requirements. Monette v. Elec. Data Sys. Corp., 90 F.3d 1173, 1178 (6th Cir. 1996); Smith v. Ameritech, 129 F.3d 857, 866 (6th Cir. 1997).

The next issue is whether Plaintiff's requests for accommodation were reasonable. Id. Reasonable accommodation may include "making existing facilities used by employees readily accessible to and usable by individuals with disabilities; and job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provisions of qualified readers or interpreters, and other similar accommodations for individuals with disabilities." 42 U.S.C. § 12111(9)(A) and (B).

11

"Essential functions" of Plaintiff's job description include, "sort and process incoming contributions, payments to receivables, and other receipts...process, post, and mail invoices to H&SS customers and donors...coordinate collection process of aging receivables with H&SS...sort and post all invoices...process check runs, including check register reports for distribution to client chapters." (Docket Entry No. 40, Exhibit 2, p. 2). In her deposition, Plaintiff stated she would physically open and sort mail and contributions at ARC's Nashville office, post mail from ARC, endorse checks mailed to the office, attend staff meetings, and review financial statements with her supervisor. (Docket Entry No. 40, Exhibit 1, Plaintiff's Deposition p. 10-12, 16, 21). Additionally, Plaintiff's supervisor would personally deliver cash receipts or checks for Plaintiff to process. Id. at p. 8. Plaintiff stated that if she had questions, she would walk to her supervisor's cube. Id. at p. 6.

In affirming the district court's dismissal of a similarly situated plaintiff's claim, the Sixth Circuit held "Plaintiff's claim, however, is based on the false premise that her request for home-based work was a reasonable accommodation...[P]laintiff's work was objectively unsuited to off-site performance-plaintiff would need to refer to documents, consult with co-workers and seek guidance from supervisors to such a degree that her presence on-site was necessary." Booker v. Waters, No. 97-5482, WL 2008 at *3. The Sixth Circuit similarly held in Smith v. Ameritech, 129 F.3d 857 (6th Cir. 1997), that

> "Plaintiff's requested accommodation would have required defendants to allow him to work from his own home. The Seventh Circuit has held that the ADA does not require employers "to allow disabled workers to work at home, where their productivity would be greatly reduced." Vande Zande v. Wisconsion, 44 F3d 538, 545 (7th Cir. 1995). The Fourth Circuit reached the same conclusion, holding that "[e]xcept in the unusual case where an employee can effectively perform all work-related duties at home, an employee 'who does not come to work cannot perform *any* of his job functions, essential or otherwise.'" Tyndall v. National educ. Ctrs., Inc., 31 F.3d 209, 213 (4th Cir. 1994).

Id. at 867.

The record reflects that the majority of Plaintiff's "essential functions" at ARC required her to physically be at the office to process checks, receipts, and mail, as well as interact with her supervisor and co-workers in processing receipts and attending meetings. (Docket Entry No. 40, Exhibit 1, Plaintiff's Deposition, p. 6, 10-12, 16, 21). As a result, the Court concludes that Plaintiff's request to work from home is not a "reasonable accommodation" under the ADA. 42 U.S.C. § 12111(9). Additionally, the record reflects that even if Plaintiff were allowed such an accommodation, the specialists she consulted on her disability concluded that she is unable to work entirely, with or without accommodations. (Docket Entry No. 40, Exhibit 9, p. 15, Exhibit 10, p. 4). For these reasons, the Court concludes that Plaintiff's request for an accommodation from the Defendant was unreasonable as a matter of law.

Accordingly, the Court concludes that Defendant's motion for summary judgment (Docket Entry No. 39) should be granted.

An appropriate Order is filed herewith.

**ENTERED** this the 7th of March, 2013.

WILLIAM J. HAYNES, JR.
Chief Judge
United States District Court